IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MARK and LADONYA BRYANT,    \*
    \*
       Plaintiffs,    \*
    \*
vs.    \*    No. 3:12-cv-00147-SWW
    \*
    \*
    \*
STATE FARM FIRE AND    \*
CASUALTY COMPANY,    \*
    \*
       Defendant.    \*

<u>OPINION AND ORDER</u>

    Plaintiffs Mark and LaDonya Bryant bring this action against Defendant State Farm and Fire Casualty Company (State Farm) alleging breach of contract and bad faith in State Farm's denial of a claim they made against their State Farm homeowner's insurance policy following the loss of their home in a fire on July 4, 2011.  State Farm contends Plaintiffs committed arson to collect the insurance proceeds and denied their claim on that basis.

    Before the Court are cross-motions for partial summary judgment.  Plaintiffs move for partial summary judgment [doc.#16] on their breach of contract claim.  State Farm, in turn, moves for partial summary judgment [doc.#13] on Plaintiffs' tort of bad faith and punitive damages claims.  Responses and replies to these motions have been filed.  Also before the Court is a motion by Plaintiffs to compel discovery [doc.#42] to which State Farm has responded in opposition.  For the reasons that follow, the Court denies

Plaintiffs' motion for partial summary judgment, denies State Farm's motion for partial

summary judgment, and denies Plaintiffs' motion to compel discovery.

I.

Plaintiffs owned a home at 421 NW Third Street, Walnut Ridge, Arkansas, that

was insured under a homeowner's policy issued by State Farm.  The policy provides in

pertinent part as follows:

**SECTION 1 – LOSSES INSURED**

**COVERAGE A – DWELLING**

We insure for accidental direct physical loss to the property described in
Coverage A, except as provided in **SECTION I – LOSSES NOT
INSURED**.

**COVERAGE B – PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in
Coverage B caused by the following perils, except as provided in
**SECTION I – LOSSES NOT INSURED**:

1. **Fire or lightning.**

**SECTION I – CONDITIONS**

12. **Intentional Acts**.  If you or any person insured under this policy causes
or procures a loss to property covered under this policy for the purpose of
obtaining insurance benefits, then this policy is void and we will not pay
you or any other **insured** for this loss.

**SECTION I AND SECTION II – CONDITIONS**

2. **Concealment or Fraud**.  This policy is void as to you and any other
**insured**, if you or any other **insured** under this policy has intentionally
concealed or misrepresented any material fact or circumstance relating to
this insurance, whether before or after a loss.

Policy Number 04-CU-4580-4.

Plaintiffs purchased the home for approximately $60,000 and had insurance coverage for $143,700.  Plaintiffs state the estimated cost of replacement of their home is in excess of $300,000.

At the time of the fire, Plaintiffs had temporarily moved to a $700 per month rental property in nearby Imboden, Arkansas, leaving the Walnut Ridge house unoccupied. Plaintiffs' plan was to move temporarily while they performed certain renovations to their home but their plan was delayed when an unexpected illness hospitalized Mark and required a trip to the Mayo Clinic for treatment.  At the time of the fire, no renovations had been started or completed and no materials had been purchased.  Plaintiffs state this is because LaDonya's father, Raymond Cain, who was largely responsible for coordinating those repairs, was busy on a number of different issues and a major flood in the region delayed his schedule.  Mark also testified that he had someone look at the floors of the house and was "shocked" that the estimate "was going to be a lot more money than what we were expecting."

Mark's illness resulted in medical debt and caused him to miss over four weeks of work and lose his remaining sick days.  This medical debt caused the Plaintiffs to fall behind on their mortgage payments.  In addition, Mark was receiving 60% of his normal salary under a long term disability policy at the time of the fire.  However, despite the fact that Plaintiffs were two months behind on their mortgage at the time of the fire given Mark's health situation, Plaintiffs have subsequently caught their mortgage up now that

Mark's health has returned and they are current on their payments.

On the evening of July 4, 2011, LaDonya's father was holding a Fourth-of-July party at his shop in Hoxie, Arkansas.  LaDonya left the rental house in Imboden at approximately 1:00 p.m., going to purchase fireworks, food, and prepare for the party. Mark followed with their children at approximately 3-3:30 p.m. and may have stopped with the children at their school.  In any case, he went to LaDonya's parents' house where he met LaDonya.

Plaintiffs state that they remained either at LaDonya's parents' house or at the party until 10:00 p.m. and that the only time anyone left the presence of the parties' attendees was at 5:50 p.m. when LaDonya left to pick up her son, Gage, from his father's house in Bono, Arkansas.  LaDonya states she was back with her son by 7:00 p.m. at her parents' house and Plaintiffs state that from 7:00 p.m. until 10:45 p.m. indisputable direct evidence exists that Mark and LaDonya were at the party and then at LaDonya's parents' house afterwards.  State Farm admits that Plaintiffs have produced affidavits from multiple witnesses attesting to  Plaintiffs' whereabouts at the time of the fire but contests the reliability of those affidavits "based on circumstantial evidence and the fact that Plaintiffs' home was burned."

Plaintiffs were driving their separate vehicles away from LaDonya's parents' house at approximately 10:45 p.m. when they received a call notifying them that their house was on fire.  The Walnut Ridge Fire Department Incident Report indicates that the alarm for the fire was sounded at 10:47 p.m.  The fire department arrived on the scene at

10:52 p.m.  State Farm's cause and origin expert, Don Davis, who inspected the scene twice and interviewed each Plaintiff, opines that the fire was caused by "human intervention" and was started "by a device capable of producing an open flame, such as a match, lighter or candle."  Davis states he did not find a match, lighter, or candle at the scene, however, and the accelerant test came back negative.  Davis initially stated he had no idea how long the burn time for the fire was but later stated he would say the burn time for the fire was less than one hour.  When State Farm's investigator, Bob Hamilton, was asked if there was any information that he could share to identify who set the fire, he responded, "No. I wish there was."[1]

Following its investigation, State Farm denied Plaintiff's claim in a letter dated February 21, 2012, and voided their insurance policy as of the date of the July 4, 2011 fire.  The denial was based on policy language concerning intentional acts and concealment or fraud of material facts or circumstances in connection with the claim. State Farm informed Plaintiffs it had denied their claim after a review of Plaintiffs' examinations under oath, documents submitted, and other information obtained during investigation because it determined:

> 1.  You or some person insured under this policy caused or procured this fire loss to property covered under this policy for the purpose of obtaining

---

[1] Plaintiffs also state that Hamilton ignored the fact that the Fourth of July is one of the worst nights for vandalism and fires and that he ignored testimony from Plaintiffs' neighbor that some kids were shooting fireworks near Plaintiffs' house before the fire.  Hamilton, however, notes, *inter alia*, that there were no signs to indicate any forced entry into the house and that Davis states the fire started in a closet.  Hamilton additionally noted that fireworks typically start a fire on the roof of a house.

insurance benefits;

2.  Your intentional misrepresentation and concealment as to the material facts and circumstances surrounding this loss;

3.  Your intentional misrepresentations in the presentation of your claim;

[4].  The loss was not caused by accidental direct physical loss.

The denial letter further stated, "For these and other good and valid reasons, both known and unknown, State Farm Fire and Casualty Insurance Company respectfully denies this claim.

## II.

Plaintiffs move for partial summary judgment on their breach of contract claim on grounds that even if the Court accepts the opinion of State Farm's cause and origin expert that the fire was intentionally set (which Plaintiffs state they question but will accept for purposes of their motion), State Farm has denied their claim with absolutely no evidence connecting Plaintiffs with the fire.  Plaintiffs state that indisputable and overwhelming proof exists that Plaintiffs were at a Fourth-of-July party in a neighboring city at the time the fire started and State Farm offers no evidence suggesting that Plaintiffs, or anyone acting at their direction, started the fire.  Plaintiffs argue that it is State Farm's burden to prove the arson exclusion in Plaintiffs' homeowner's policy and that because State Farm simply cannot meet proof with proof to demonstrate a genuine issue of material fact with respect to this issue, they are entitled to summary judgment on their breach of contract claim.

State Farm, in turn, moves for partial summary judgment regarding Plaintiffs' tort of bad faith and punitive damages claims on grounds that Plaintiffs cannot present evidence to support any act or failure to act so as to establish bad faith.  State Farm argues there is no genuine issue of material fact with regard to bad faith and punitive damages and that it is entitled to judgment as a matter of law on those claims.

## A.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The nonmoving party must respond by submitting evidentiary materials that set out "'specific facts showing ... a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted).  Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

1.

The Court first addresses Plaintiffs' motion for partial summary judgment on their breach of contract claim. "[A] mere showing of arson does not automatically relieve the insurer from liability under a fire policy excluding loss caused by the insured." *Haynes v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 11 Ark. App. 289, 292, 669 S.W.2d 511, 513 (1984). "It is also necessary to prove by direct or circumstantial evidence that the insured set the fire or caused the house to be burned." *Id.* The Arkansas Supreme Court in *Haynes* observed:

> There are ordinarily no eye witnesses to an act of arson because the deliberate burning of an insured building by its owner is usually accomplished alone and in secret. Any material fact in issue, however, may be established by circumstantial evidence even though the testimony of other witnesses may be undisputed. The fact that evidence is circumstantial does not render it insubstantial as our law makes no distinction between direct evidence of a fact and circumstances from which it might be inferred.

-8-

The circumstances may be such that different minds can reasonably draw
different conclusions from them without resort to speculation. Where there
are facts and circumstances in evidence from which reasonable minds might
reach different conclusions without resort to speculation the matter is an
issue of fact which must be submitted to the jury for its determination.

*Id*. (citation omitted).  See also *Allstate Ins. Co. v. Voyles*, 76 Ark. App. 334, 340, 65

S.W.3d 457, 461 (2002) (same).

The Court finds that there are facts and circumstances from which reasonable

minds might reach different conclusions with regard to the question of arson without

resort to speculation and that the matter is thus an issue of fact which must be submitted

to the jury for its determination.  Accordingly, the Court denies Plaintiffs' motion for

partial summary judgment on their breach of contract claim.

2.

The Court now turns to Plaintiffs' tort of bad faith claim.  The standard for

establishing a claim for bad faith on the part of an insurance company is rigorous and

difficult to satisfy.  *Unum Life Ins. Co. of America v. Edwards*, 362 Ark. 624, 627, 210

S.W.3d 84, 87 (2005) (citation omitted).  In order to state a claim for bad faith, a claimant

must allege that the defendant insurance company engaged in affirmative misconduct that

was dishonest, malicious, or oppressive.  *Id*. (citations omitted).  "[B]ad faith" is defined

as "dishonest, malicious, or oppressive conduct carried out with a state of mind

characterized by hatred, ill will, or a spirit of revenge."  *Id*.  362 Ark. at 628, 201 S.W.2d

at 87 (citation omitted).[2]  Negligence, bad judgment, nightmarish red tape, hardball,

delaying investigations for months, and failure to provide a reason for the company's

initial refusal of payment does not constitute bad fath.  *Willis v. Shelter Mut. Ins. Co.*, No.

5:12-cv-101, 2012 WL 5818165, *1 (E.D. Ark. Nov. 15, 2012) (citation omitted).  The

tort of bad faith does not arise from a mere denial of a claim; there must be affirmative

misconduct.  *Unum*, 362 Ark. at 628, 201 S.W.2d at 88 (citations omitted).

In addition to referencing the above standards, Plaintiffs also reference the

Arkansas Trade Practices Act and Rule 43 of the Arkansas Insurance Department in

support of their bad faith claim.  Rule 43 was intended to implement the Arkansas Trade

Practices Act.  *Design Professionals Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906, 911-912

(8th Cir. 2006).  "The purpose of Rule 43 was to establish 'certain minimum standards' to

control how insurance companies settle claims."  *Id.* (quoting Ark. Ins. Rule 43, § 1).

While the Trade Practices Act gives the state authority to establish rules of conduct and to

punish offenders, it provides no private right of action to insureds for violations of the Act

or of regulations promulgated under the Act's authority.  *Id.*

State Farm argues that Plaintiffs' bad faith claim is founded on Rule 43 and the

Trade Practices act and, thus, Plaintiffs have not asserted a viable bad faith claim as there

is no private right of action for violations of Rule 43 and the Trade Practices Act, an

---

[2] Actual malice may be inferred from conduct and surrounding circumstances.  *Southern Farm Bureau Cas. Ins. Co. v. Allen*, 326 Ark. 1023, 1027, 934 S.W.2d 527, 529 (1996) (citation omitted).

alleged violation of Rule 43 and the Trade Practices Act does not constitute bad faith, and

the remedies under Rule 43 and the Trade Practices Act only apply where there is no bad

faith.  In support of this argument, State Farm cites *Aetna Casualty & Surety Co. v.*

*Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984), which stated as follows:

> [T]he Trade Practices Act is only an effort to clean up undesirable conduct
> of insurers and the penalty and fees statute applies only to first party claims.
> The penalty and fees statute is the primary remedy an insured has against an
> insurer who fails or refuses to pay a claim when there is no bad faith. The
> Trade Practices Act provides for procedures and penalties to be utilized by
> the provisions of the act. Neither of these remedies deals with the area of
> bad faith much less pre-empts it.

Notwithstanding that Plaintiffs reference Rule 43 and the Trade Practices Act in

support of their bad faith claim, the Court will allow Plaintiffs' bad faith claim to proceed

under the standards governing the tort of bad faith as set forth in Arkansas case law and in

Arkansas's bad faith jury instruction, Arkansas Model Jury Instructions, Civil § 2304

(2013).  The Court finds on the basis of the record as it now stands that there are facts and

circumstances from which reasonable minds might conclude that State Farm made a

decision to ignore evidence obtained in its investigation that pointed to Plaintiffs'

truthfulness and cast doubt on the idea that they committed arson and made

misrepresentations.  *Cf. Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 203, 148

S.W.3d 768, 778 (2004) (in affirming jury's bad-faith verdict against defendant insurance

company, court noted that "[w]hat we have in this case is not a mere failure to investigate.

[Defendant] made a decision to ignore evidence obtained in an investigation that pointed

to the applicant's truthfulness and cast doubt on the idea that she had made any

misrepresentations."). Accordingly, the Court denies State Farm's motion for partial summary judgment on Plaintiffs' tort of bad faith claim.[3]

Given that the Court has denied State Farm's motion for partial summary judgment on Plaintiffs' tort of bad faith claim, the Court denies State Farm's motion for partial summary judgment on Plaintiffs' punitive damages claim. See *Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 29-30, 665 S.W.2d 873, 873-874 (1984) (if an insurer is found liable for bad faith, punitive damages are available; court noted that "[c]ompensatory damages for bad faith in an occasional lawsuit would not deter the wrongdoing insurance company, or others, from seeking a wrongful gain by similarly victimizing hundreds of other policyholders. Punitive damages will have a deterrent effect in a case of this type.").[4]

---

[3] The Court does not address at this time whether what may be deemed a violation of Rule 43 and the Trade Practices Act is evidence of the tort of bad faith such that a jury instruction to that effect is warranted. *Cf. Broadway Arms*, 281 Ark. at 135, 664 S.W.2d at 466 (reversing trial court for giving an instruction which omitted a portion of the relevant statute from the Trade Practices Act; court noted that "[a] violation of the Trade Practices Act is not necessarily evidence of bad faith" and "[a]ppellant properly objected to the court giving the erroneous instruction ... which improperly stated that a violation of the statute was evidence of bad faith and omitted a vital portion of the statute."); Nathan Price Chaney, *A Survey of Bad Faith Insurance Tort Cases in Arkansas*, 64 Ark. L. Rev. 853, 862-863 (2011) (noting that while a violation of a statute is some evidence of negligence, a violation of the Trade Practices Act is not necessarily evidence of bad faith and if offered, an instruction to this effect must have support in the evidence; furthermore, if a jury instruction is offered that a violation of the Trade Practices Act is evidence of deceit or bad faith, then the section of the Trade Practices Act relied upon must have an element of scienter, and the instruction should contain all elements of the statute, including elements referencing scienter or a pattern and practice of conduct).

[4] Whether Plaintiffs' bad faith and punitive damages claims get to a jury or whether those claims survive a motion to set aside any verdict the jury may render are questions for another day.

III.

The Court now turns to Plaintiffs' motion to compel discovery [doc.#42].

Plaintiffs state that they deposed Bob Hamilton, the State Farm Investigator primarily

responsible for recommending the denial of this claim, on February 21, 2013.  At this

deposition, state Plaintiffs, it was discovered that Hamilton did not make the

recommendation to deny the claim until approximately January 22, 2012, over six months

after the "target date" cited by State Farm as the date from which it reasonably anticipated

litigation.  In addition, state Plaintiffs, it was determined that certain documents have

been redacted from this portion of the claims file for which the Plaintiffs can demonstrate

substantial need in supporting their bad faith claim against State Farm.  Plaintiffs state

they have attempted to obtain this information from State Farm without the necessity of

Court intervention but were unsuccessful.  Plaintiffs request a Court Order compelling the

production of the claims file pages which have been redacted from State Farm's earlier

production and state that to the extent State Farm claims that any of this information

contains privileged communications, the Court should conduct an in camera review of

these documents for purposes of determining the applicability of any claimed privilege.

The Court finds that Plaintiffs' motion to compel discovery is untimely as the

discovery cut off was February 1, 2013 [doc.#12] but Plaintiffs did not depose Hamilton

until February 21, 2013.  While the Court's Final Scheduling Order permitted the parties

to agree to conduct discovery beyond the discovery cut off, the Final Scheduling Order

makes clear that "*the Court will not be available to resolve any disputes which arise*

-13-

*during the course of this extended discovery*.”  See Final Scheduling Order at p. 1

(emphasis in original) [doc.#7].  Accordingly, the Court denies Plaintiffs' motion to

compel as untimely.[5]

IV.

For the foregoing reasons, the Court denies Plaintiffs' motion for partial summary

judgment [doc.#16], denies State Farm's motion for partial summary judgment [doc.#13],

and denies Plaintiffs motion to compel discovery [doc.#42].

IT IS SO ORDERED this 9th day of April 2013.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[5] State Farm states that despite receiving production of the claim file and a detailed
privilege log in November 2012, Plaintiffs failed to contest the asserted privilege in due time.